Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| | | |
|---|---|---|
| Autoridad para las Alianzas Público-Privadas<br><br>Recurrida<br><br><br>vs.<br><br><br>CH4 Green Energy, LLC<br><br>Recurrente | KLRA202500020 | **REVISIÓN ADMINISTRATIVA** procedente de la Autoridad para las Alianzas Público-Privadas<br><br>Caso Núm.: RFP 2023-03 (LNG to H2 Combined Cycle Generation Plant)<br><br>Sobre: Recurso de Revisión |

Panel integrado por su presidente, el Juez Rivera Colón, el Jueza Santiago Calderón y el Juez Marrero Guerrero[1].

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2025.

Comparece CH4 Green Energy, LLC (CH4 o parte recurrente) quien presenta recurso de Revisión Judicial en el cual solicita la revocación del "Final Notification Selected Proponent" del "Request for Proposals"[2] (RFP 2023-03). La misma fue emitida por la Autoridad para las Alianzas Público-Privadas de Puerto Rico (AAPP, Autoridad o parte recurrida), el 20 de diciembre de 2024, y enviada por correo certificado a CH4 el 23 de igual mes y año. Mediante dicha determinación, AAPP le comunicó a la parte recurrente que el Comité de Alianzas había seleccionado a Energiza, LLC (Energiza) como el proponente para el Puerto Rico LNG to H2 Combined Cycle Generation Plant Proyect (el Proyecto).

---

[1] Véase Orden Administrativa OATA-2025-007, donde se designa al Hon. Ricardo G. Marrero Guerrero en sustitución del Hon. Nery E. Adames Soto debido a su inhibición.
[2] "Request for Proposals LNG to H2 Combined Cycle Generation Plant RFP 2023-03".

Número Identificador

SEN2025 _____

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, desestimamos el recurso presentado mediante los fundamentos que expondremos a continuación.

**I.**

El caso de autos tuvo su génesis, el 22 de agosto de 2023,[3] cuando la AAPP cursó el RFP 2023-03 para solicitar ofertas de proponentes responsables y cualificados para desarrollar, construir, administrar y operar una nueva instalación generadora de ciclo combinado aproximadamente de 300 megavatios. De igual forma, la AAPP buscaba que el proponente fuera capaz de utilizar múltiples combustibles, incluidos: gas natural, hidrógeno y combustible para la calefacción con contenido ultra bajo de azufre. Asimismo, la parte recurrida deseaba que el proponente suministrara electricidad a la Autoridad de Energía Eléctrica (AEE) de conformidad con un acuerdo de compra y operación de energía a largo plazo (Power Purchase and Operating Agreement o PPOA).

En síntesis, el RFP 2023-03 requería que cada uno de los proponentes sometiese como parte de sus propuestas: (1) una propuesta técnica y de funcionamiento de planta; (2) un calendario de implementación; (3) una propuesta de precio; (4) un análisis de capacidad financiera; (5) un PPOA listo para firmar y, (6) una carta de crédito o cualquier otra forma mutuamente acordada de fianza para asegurar el cumplimiento del PPOA.[4] Así pues, una vez presentadas las propuestas, los criterios de evaluación en el presente procedimiento competitivo eran los siguientes: (1) Cumplimiento de la normativa aplicable "Pass/Fail"; (2) Tecnología

---

[3] Los proponentes tenían hasta el 13 de octubre de 2023 para presentar sus propuestas. Sin embargo, al presentarse el "Addendum No. 8 To Request For Proposals" la fecha límite para presentar las propuestas se extendió hasta el 15 de marzo de 2024. Véase, Exhibit 2 "Request for Proposals LNG to H2 Combined Cycle Generation Plant RFP 2023-03"; Apéndice pág. 275. Véase, Exhibit 4 "Addendum No. 8 To Request For Proposals"; Apéndice pág. 548.

[4] Véase, Exhibit 7 "Partnership Committee Report LNG to H2 Combined Cycle Generation Plant Proyect" a la pág. 8; Apéndice pág. 655.

y Rendimiento de la Planta (25%); (3) Cronograma e Implementación (15%); (4) Componentes Financieros, Comerciales y de Riesgo (45%); (5) Capacidad Financiera (10%) y, (6) Puntuación por el Comité de Alianzas sobre la Propuesta y Presentación (5%).[5] Así las cosas, el 15 de marzo de 2024, CH4 presentó su propuesta.

Luego de varios meses, el 10 de julio de 2024, la AAPP le notificó mediante correo electrónico a CH4 que el Comité de Alianzas, tras considerar, evaluar y discutir las propuestas recibidas había seleccionado a otra compañía como un "Preferred Proponent", sin revelar la identidad de la compañía seleccionada. Así pues, el 20 de diciembre de 2024, la Autoridad emitió la "Final Notification Selected Proponent" y la misma fue enviada por correo certificado a CH4 el 23 de diciembre de 2024. Mediante dicha determinación, AAPP le comunicó a la parte recurrente que el Comité de Alianzas había seleccionado a Energiza como el proponente seleccionado para el Proyecto.

En desacuerdo, CH4 recurre ante este foro apelativo intermedio, y plantea la comisión de los siguientes errores, a saber:

1. *Erró la AAPP al emitir una notificación de adjudicación defectuosa en la que no se incluyeron los elementos exigidos por la Ley y la jurisprudencia, impidiendo a CH4 conocer las puntuaciones obtenidas por cada proponente en cada renglón evaluado.*
2. *Erró la AAPP al proveer acceso a CH4 al expediente administrativo a escasos tres (3) días de cumplirse el plazo jurisdiccional a los efectos de una eventual impugnación de la adjudicación del RFP ante el Tribunal de Apelaciones, y al no proveer copia de las propuestas de los licitadores. Con ello se vulneró el debido proceso de ley y se provocó la indefensión jurídica de CH4 al no tener tiempo material suficiente para revisar con la debida minuciosidad los documentos del expediente del RFP y al faltar entre estos las propuestas de sus competidores, las cuales permiten confirmar el cumplimiento por los proponentes con los requerimientos del RFP y la corrección de la evaluación por la agencia.*

---

[5] *Íd.*, a la pág. 55; Apéndice pág. 702.

> *3. Erró la AAPP (Comité de Alianzas) al adjudicar, de forma arbitraria e irracional y en perjuicio del más alto interés público, la buena pro a un licitador (Energiza) cuya propuesta incluyó información falsa y al que se le otorgó oportunidad de revisar su propuesta (tras una evaluación meramente preliminar de las propuestas de todos los competidores), sin conceder la citada opción al resto de licitadores. El favoritismo y la parcialidad mostrados por la AAPP en el presente procedimiento competitivo justifican la declaración de la nulidad de pleno derecho del proceso de selección y adjudicación del RFP 2023-03.*

El 22 de enero de 2024, la AAPP presentó una "Moción de Desestimación de Recurso de Revisión Judicial". Alegó que este foro apelativo carece de jurisdicción para atender la controversia, debido a que CH4 no presentó un recurso mediante el mecanismo de auxilio de jurisdicción, y tampoco notificó su presentación a la AEE, según lo exige la Ley Núm. 29-2009, *infra.* Aduce que, tanto el término para presentar el auxilio, así como para notificar el recurso a la AEE, es de carácter jurisdiccional.

Por su parte, el 27 de enero de 2025, CH4 presentó su "Oposición a Moción de Desestimación de Recurso de Revisión Judicial". En esencia, argumenta que se le vulneró su debido proceso de ley, toda vez que la notificación de adjudicación no menciona la información necesaria para garantizar la eventual notificación de la AEE. Además, indicó que cumplió con la Regla 58 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 58, puesto que notificó el recurso a la agencia recurrida y los demás licitadores que participaron en el proceso. A su entender, la AEE ni los otros proponentes "están legitimados en derecho para responder el recurso de revisión presentado por CH4",[6] sino que "la única parte 'en posición de responder' es la Autoridad que emitió dicho aviso de adjudicación".[7]

---

[6] Véase, escrito de "Oposición a Moción de Desestimación de Recurso de Revisión Judicial", a la pág. 5.
[7] *Íd.*

Consideradas las comparecencias de las partes, damos por perfeccionado el recurso y resolvemos.

**II.**

**A.**

Los tribunales tienen la responsabilidad de examinar su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). La jurisdicción se refiere al "poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias que tiene ante sí". *R&B Power. Inc. v. Junta de Subasta ASG*, 2024 TSPR 24. Los tribunales deben ser celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022). En ese sentido, los foros judiciales tenemos el deber ineludible de atender con preferencia los asuntos concernientes a la jurisdicción. *R&B Power. Inc. v. Junta de Subasta ASG, supra.* Esto, pues, "[u]na vez un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la desestimación inmediata del recurso". *Pueblo v. Torres Medina*, 211 DPR 950, 958 (2023).

Es norma reiterada que, para adjudicar un caso, los foros judiciales de Puerto Rico deben tener jurisdicción sobre la materia, así como sobre las partes litigiosas. *FCPR v. ELA et al.*, 211 DPR 521, 530 (2023). La jurisdicción sobre la materia "se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". J.A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, 1.ra ed., Colombia, 2010, pág. 25. Es el Estado el único que puede, a través de sus leyes, privar a un tribunal de jurisdicción sobre la materia, ya sea por disposición expresa o por implicación necesaria. *MCS Advantage v. Fossas*

*Blanco et al.*, 211 DPR 135, 145 (2023). La falta de jurisdicción sobre la materia da lugar a las consecuencias siguientes:

> *(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. Beltrán Cintrón et al v. ELA et al,* 204 DPR 89, 101-102 (2020).

Por otro lado, la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83, nos otorga la facultad para desestimar, *muto proprio*, cualquier recurso cuando, entre otras circunstancias, este Tribunal de Apelaciones carezca de jurisdicción para atender el mismo.

**B.**

La Autoridad para las Alianzas Público-Privadas es una corporación pública del Gobierno de Puerto Rico creada por virtud de la Ley de Alianzas Público-Privadas, Ley Núm. 29-2009, según emendada, 27 LPRA sec. 2601 *et seq.* (Ley Núm. 29-2009). Este estatuto tiene como objetivo principal declarar la política pública del Estado de favorecer y promover alianzas con entes privados. De esta forma, se promueve la creación, el desarrollo y mantenimiento de proyectos, se mejoran los servicios y las funciones del Estado, se crean empleos y se estimula el desarrollo económico y la competitividad del Estado.

En lo pertinente, el Art. 20 (b) y (c) de la Ley Núm. 29-2009, 27 LPRA sec. 2619, establece lo siguiente:

> *(b) Solicitud de Revisión Judicial. — El solicitante no cualificado o* **el Proponente no seleccionado tendrá un <u>término jurisdiccional</u> de veinte (20) días, contados a partir de la fecha del envío por correo certificado de la notificación del Comité de Alianzas o de la Autoridad,** *según sea el caso, de la determinación final,* **para presentar un recurso de revisión administrativa ante el Tribunal de**

*Apelaciones, __utilizando el mecanismo de Auxilio de Jurisdicción de dicho Tribunal.__*

[...]

*(c) Notificación. —* **La parte recurrente ante el Tribunal de Apelaciones** *o el Tribunal Supremo de Puerto Rico* **notificará copia del recurso a la Autoridad, __a la Entidad Gubernamental Participante__**, al Proponente seleccionado *(en caso de impugnarse la adjudicación del Contrato de Alianza)*, **a los Proponentes no seleccionados** *(en caso de impugnarse la adjudicación del Contrato de Alianza)*, **a las Personas que fueron cualificadas** *(en caso de impugnarse la cualificación por el Comité de Alianza)*, **y a las Personas que no fueron cualificadas** *(en caso de impugnarse la cualificación por el Comité de Alianza)*, **__dentro del término de veinte (20) días__, establecido en el Artículo 20 (b), disponiéndose que el cumplimiento con dicha notificación será un requisito de carácter jurisdiccional**. *Toda notificación bajo este Artículo 20 (c) se hará mediante correo certificado.*

(Énfasis provisto).

### III.

En el caso de autos, CH4 acudió ante este foro apelativo solicitando que, ante las múltiples irregularidades en el proceso de selección y adjudicación del RFP 2023-03, y debido a que se le violentó su debido proceso de ley, revoquemos la "Final Notification Selected Proponent". Como ya explicamos, la AAPP peticionó la desestimación del recurso debido a que CH4 incumplió con el procedimiento especial de revisión judicial dispuesto en la Ley Núm. 29-2009, *supra*. Específicamente, porque no presentó, dentro del término jurisdiccional de 20 días, un recurso mediante el mecanismo de auxilio de jurisdicción, y tampoco notificó su presentación a la AEE.

Conforme al derecho discutido, el Art. 20 (b) de la Ley Núm. 29-2009, *supra*, dispone que:

*(b) Solicitud de Revisión Judicial. — El solicitante no cualificado o* **el Proponente no seleccionado tendrá un __término jurisdiccional__ de veinte (20) días**, *contados a partir de la fecha del envío por correo* **certificado de la notificación del Comité de Alianzas o de la Autoridad**, *según sea el caso, de la*

*determinación final, **para presentar un recurso de revisión administrativa ante el Tribunal de Apelaciones**, <u>**utilizando el mecanismo de Auxilio de Jurisdicción de dicho Tribunal***</u>.

(Énfasis nuestro).

Según se desprende de la precitada disposición legal, el proponente no seleccionado que presente un recurso de revisión judicial tiene que hacerlo mediante el mecanismo de auxilio de jurisdicción, el cual está dispuesto en la Regla 79 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 79.

Sin embargo, en el caso de autos, a pesar de que en la notificación final se le apercibió a la recurrente del mecanismo adecuado, ésta no acompañó su recurso con una moción en Auxilio de Jurisdicción.

Por otra parte, el Art. 20 (c) de la Ley Núm. 29-2009, *supra*, dispone que:

> *(c) Notificación. —* ***La parte recurrente ante el Tribunal de Apelaciones*** *o el Tribunal Supremo de Puerto Rico* ***notificará copia del recurso a la Autoridad,*** <u>***a la Entidad Gubernamental Participante***</u>***, al Proponente seleccionado (en caso de impugnarse la adjudicación del Contrato de Alianza), a los Proponentes no seleccionados (en caso de impugnarse la adjudicación del Contrato de Alianza), a las Personas que fueron cualificadas (en caso de impugnarse la cualificación por el Comité de Alianza), y a las Personas que no fueron cualificadas (en caso de impugnarse la cualificación por el Comité de Alianza),*** <u>***dentro del término de veinte (20) días, establecido en el Artículo 20 (b), disponiéndose que el cumplimiento con dicha notificación será un requisito de carácter jurisdiccional***</u>*. Toda notificación bajo este Artículo 20 (c) se hará mediante correo certificado.*

(Énfasis suplido).

La entidad gubernamental participante a la cual alude el antedicho Art. 20 (c) de la Ley Núm. 29-2009, *supra,* se refiere a la "Entidad Gubernamental con inherencia directa sobre el tipo de Funciones, Servicios o Instalaciones que se someterán a un Contrato de Alianza y la cual es o será parte de un Contrato de

Alianza". Art. 2 (m) de la Ley Núm. 29-2009, 27 LPRA sec. 2601.

Es decir, "es el ente del Estado que, a través de un contrato de alianza, transferirá sus obligaciones para que las ejecute la entidad privada seleccionada". *PR Fast Ferries et al. v. AAPP*, 210 DPR 332, 332 (2022). En el caso de marras, el Contrato de Alianza, entiéndase, el PPOA, constituye una transacción de la AEE. Esto, debido a que, un Contrato de Alianza es:

> ***El contrato otorgado entre el Proponente seleccionado y la Entidad Gubernamental Participante para establecer una Alianza***, *el cual **puede incluir**, **pero no se limitará a**, **la delegación de una Función**, **la administración o prestación de uno o más Servicios**, o el diseño, construcción, financiamiento, mantenimiento u operación de una o más Instalaciones, que sean o estén estrechamente relacionados con los Proyectos Prioritarios, según establecidos en el Artículo 3 de esta Ley. Un Contrato de Alianza puede ser, sin que se entienda como una limitación, cualquier modalidad de los siguientes tipos de contratos: "diseño/construcción (design/build)", "diseño/construcción/ operación (design/ build/ operate)", "diseño/ construcción/ financiamiento/ operación (design/ build/ finance/ operate)", "diseño/ construcción/ transferencia/ operación (design/ build/ transfer/ operate)", "diseño/ construcción/ operación/ transferencia (design/ build/ operate/ transfer)", contrato de llave en mano ("turnkey"), contrato de arrendamiento a largo plazo, contrato de derecho de superficie, contrato de concesión administrativa, contrato de empresa común ("joint venture"), contrato de administración y operación a largo plazo, y cualquier otro tipo de contrato que separe o combine las fases de diseño, construcción, financiamiento, operación o mantenimiento de los Proyectos Prioritarios, según establecidos en el Artículo 3 de esta Ley. Las obligaciones que generen estos contratos serán vinculantes siempre que no sean contrarias a la ley, la moral, ni al orden público.* Art. 2 (i) de la Ley Núm. 29-2009, 27 LPRA sec. 2601.

Mientras que, una transacción de la AEE es:

> ***Cualquiera y toda transacción mediante la cual la AEE o el Gobierno de Puerto Rico establezca una o más Alianzas con respecto a cualquier función***, ***servicio o instalación de la AEE*** *o un Contrato de Venta de los activos de la AEE relacionados a la generación de energía, y que se lleve a cabo conforme a las disposiciones de la Ley 29-2009, y esta Ley.* Sección 2 (m) de la Ley para Transformar el Sistema Eléctrico de Puerto Rico, Ley Núm. 120-2018, 22 LPRA sec. 1112.

(Énfasis provisto).

En base a lo anterior, somos de la opinión que la AEE es una Entidad Gubernamental Participante, pues es parte compareciente y firmante en el PPOA. Recordemos que, la AAPP deseaba que el proponente suministrara electricidad a la AEE de conformidad con un acuerdo de compra y operación de energía a largo plazo.

Por consiguiente, CH4 tenía que cumplir con el requisito jurisdiccional dispuesto en el Art. 20 (c) de la Ley Núm. 29-2009, *supra*, y notificarle copia del recurso a la AEE dentro del término jurisdiccional de 20 días mediante correo certificado. Es menester señalar que, por ser de carácter jurisdiccional, el incumplimiento con el requisito de notificación "es fatal, improrrogable e insubsanable". *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000).

En vista del incumplimiento de CH4 con las exigencias de la Ley Núm. 29-2009, *supra*, carecemos de jurisdicción para atender el recurso de autos. Reiteramos que CH4 no presentó su recurso utilizando el mecanismo de Auxilio de Jurisdicción, y tampoco cumplió con el requisito jurisdiccional de notificarle su recurso a la AEE.

## IV.

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, desestimamos el recurso de revisión judicial solicitado por el recurrente, por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones